## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| NINA BENNETT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-06-S-4777-NE |
| | ) | |
| DECATUR GENERAL HOSPITAL, | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This is an action for sexual harassment under Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* with supplemental state law claims

for assault and battery, invasion of privacy, and outrage.  Plaintiff, Nina Bennett,

asserts these claims against the following defendants:  Decatur General Hospital

("Decatur General"), which presumably is plaintiff's employer; Appolomd Physician

Services AL, LLC, d/b/a/ Emergency Medical Management ("Appollomd"); and Dr.

Henry Gaillard ("Gaillard").[1]  Plaintiff claims, among things, that Gaillard "brought

candy to Plaintiff at work, tried to follow Plaintiff into the bathroom invading her

privacy, has touched Plaintiff inappropriately, and made inappropriate comments to

Plaintiff on an almost daily basis," and that he "tried to force his way into a bathroom

---

[1]*See* doc. no. 1 (Complaint).

with Plaintiff causing her to have to block him out."[2]

Gaillard filed an answer and asserted counterclaims for invasion of privacy, slander, and libel.[3]  He alleges that plaintiff invaded his privacy by placing him in a false light in the public eye when she filed and published false reports, and, requested that disciplinary actions be taken against him.[4]  Gaillard also alleges that plaintiff "negligently and/or intentionally published false and defamatory statements about" him, and "authorized and ratified false and defamatory statements" about him.[5]  As a result of plaintiff's alleged actions, Gaillard claims that he has suffered "loss of and damage to his reputation, emotional distress, mental anguish, shame, humiliation, and outrage."[6]

The case presently is before the court on three motions to quash subpoenas: one filed by Gaillard;[7] one filed by non-party Jackson County Hospital ("Jackson");[8] and one filed by non-party Crestwood Medical Center ("Crestwood").[9]  Gaillard requests the court to quash subpoenas issued by plaintiff to Jackson and Crestwood,

---

[2]*Id.* at ¶¶ 7, 13.

[3]Doc. no. 17.

[4]*Id.* at ¶ 39.

[5]*Id.* at ¶¶ 47-48, 52-53.

[6]*Id.* at ¶ 56.

[7]Doc. no. 56.

[8]Doc. no. 55.

[9]Doc. no. 58.

as well as to non-party Helen Keller Hospital.  Jackson and Crestwood request the

court to quash the subpoenas they, respectively, received from plaintiff.  All of the

subpoenas in question contain the following language:

> Produce and permit inspection and copying of any and all records which involve disciplinary actions against Dr. Henry Gaillard, complaints against Dr. Gaillard, reports generated about any behavior of sexual harassment or offensive touching or language towards employees, reports of disciplinary action taken towards Dr. Gaillard, and state any reasons for dismissal, as such relates to:
> **Dr. Henry Gaillard.**[10]

A.    *Quality Assurance Privilege*

All movants argue that the subpoenas should be quashed pursuant to the

Quality Assurance Privilege set forth in Alabama Code § 22-21-8, which provides in

pertinent part that:

> All accreditation, quality assurance, credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities.  No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein.  Information, documents, or records otherwise

---

[10] *See, e.g.,* doc. no. 61 (plaintiff's response to Gaillard's motion to quash), at 2 (emphasis in original).

available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials.

Ala. Code § 22-21-8(b) (1975) (Repl. Vol. 2006).  The statute defines the terms "accreditation, quality assurance and similar materials" to include

written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff.  The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.

Ala. Code § 22-21-8(a) (1975) (Repl. Vol. 2006).

Both Jackson and Crestwood argue that the subpoenas they received should be quashed because they request information that *may* have been gathered during the quality assurance process.[11]  Gaillard simply joins in the hospitals' motions and states

---

[11]*See* doc. no. 55 (Jackson's motion to quash), at ¶ 2 ("The requests deal directly with and seek information which the hospital *may* have gathered or maintained which is designed to improve the hospital's ability to identify and correct errors.") (emphasis supplied); doc. no. 58 (Crestwood's motion to quash), at ¶ 3 ("Crestwood request [sic] this Honorable Court to quash the subpoena issued by the Plaintiff as it seeks information that *may* have been obtained in furtherance of hospital quality assurance . . . .") (emphasis supplied).

-4-

generally that the privilege should apply to prevent discovery under the subpoenas.[12]
No movant identifies any specific accreditation or quality assurance information that
should be protected from production under the subpoenas.

As the parties seeking to assert the Quality Assurance Privilege, Jackson,
Crestwood, and Gaillard bear the burden of proving the privilege applies.  *See Ex
parte Coosa Valley Health Care, Inc.,* 789 So. 2d 208, 219 (Ala. 2000) ("[T]he
burden of proving that a privilege exists and proving the prejudicial effect of
disclosing the information is on the party asserting the privilege.").  None of these
parties have produced any evidence to show that the documents requested by plaintiff
were created or maintained for purposes of quality assurance, accreditation, or
creditialling, or for any other similar purpose.  Thus, there is no basis from which the
court can determine whether the documents requested truly are "quality assurance"
documents, or whether they comprise portions of Gaillard's personnel file that would
not be protected by the privilege.  Therefore, the subpoenas will not be quashed on
the basis that the information sought is protected by Alabama's Quality Assurance
Privilege.  *See id.* at 219-20 (holding that the movant did not meet its burden of
showing that the information sought was privileged because it offered no evidence

---

[12]Doc. no. 56 (Gaillard's motion to quash), at ¶ 9 ("The Defendant Henry Gaillard would aver
that this protection applies with regard to the subpoenas upon Jackson County Hospital, Helen Keller
Hospital, and Crestwood Medical Center.").

to show that the information was "maintained for purposes of quality assurance or for any other purpose covered by § 22-21-8").  *Cf. Kingsley v. Sachitano,* 783 So. 2d 824, 828 (Ala. 2000) (applying the privilege after the CEO of the movant hospital testified that the documents in question "were the subject of quality assurance, credentialling, and accreditation and thus were subject to the privilege of § 22-21-8"); *Ex parte Krothapalli*, 762 So. 2d 836, 839 (Ala. 2000) (applying the privilege after the court reviewed the documents in question and concluded they encompassed only the physician's application for staff privileges).  *See also* Fed. R. Civ. P. 45(d)(2)(A) ("When information subject to a subpoena is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.").

**B.**     *Alabama Code § 34-24-58*

Jackson and Crestwood also argue that the information requested by plaintiff is privileged under Alabama Code § 34-24-58, which provides:

> (a) The decisions, opinions, actions and proceedings rendered, entered or acted upon in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist of *any committee of physicians or surgeons*, acting as a committee of the Medical Association of the State of Alabama, or any state, county or municipal medical association or society, or as a committee of any licensed hospital or clinic, or the medical staff thereof, undertaken or

performed within the scope and function of such committee as legally defined herein shall be privileged, and no member thereof shall be liable for such decision, opinion, action or proceeding.

(b) Within the words and meaning of this section, a committee shall include one formed or appointed as a utilization review committee, or similar committee, or committee of similar purpose, to evaluate or review the diagnosis or treatment or the performance of medical services which are performed with respect to private patients or under public medical programs of either state or federal design, with respect to any physical or mental disease, injury or ailment or to define, maintain or apply the professional or medical standards of the association, society, hospital, clinic or medical staff from, by or for which it was appointed.

Ala. Code § 34-24-58 (1975) (Repl. Vol. 2002). Again, the burden of proving that the privilege applies falls on Jackson and Crestwood, the parties asserting the privilege. *See Ex parte St. Vincent's Hospital,* 652 So. 2d 225, 230 (Ala. 1994). Neither Jackson nor Crestwood has produced any evidence that the information sought represents the "decisions, opinions, actions and proceedings" of a utilization review or similar committee. *See* Ala. Code § 34-24-58.[13] Accordingly, § 34-24-58 will not prevent Jackson or Crestwood from producing documents pursuant to plaintiff's subpoenas.

---

[13]Jackson equivocally argues that, "[t]o the extent the hospital maintains utilization review committees or committee [sic] of similar purpose, their work and efforts are privileged. The privilege has not been waived and therefore the subpoena should be quashed." Doc. no. 55 (Jackson's motion to quash), at ¶ 2. Crestwood's argument, while less equivocal, is conclusory: "This Defendant requests this Court to quash the subpoena based on the fact that the documents requested are subject to the peer review statute and are privileged from disclosure." Doc. no. 58 (Crestwood's motion to quash), at ¶ 5.

**C.**     *Alabama Code § 34-24-59*

Crestwood also argues that Alabama Code § 34-24-59 prohibits it from disclosing the documents requested in plaintiff's subpoena.  The pertinent parts of that code section state:

> (a) The chief administrative officer of each hospital shall report to the Alabama State Board of Medical Examiners any disciplinary action taken concerning any physician when the action is related to professional ethics, negligence or incompetence in the practice of medicine, moral turpitude, sexual misconduct, abusive or disruptive behavior, or drug or alcohol abuse.  Disciplinary action shall include termination, revocation, probation, restriction, denial, failure to renew, suspension, reduction, or resignation of hospital privileges for any of the above reasons.  The report shall be in writing and be made within 30 days of the date of the initial action.  Failure on the part of a chief administrative officer of a hospital to file a report required under this section shall be a violation of Section 22-21-25(b)(3), and the State Board of Health may, in its discretion, impose upon the hospital found to be in violation, a civil monetary penalty in an amount not to exceed two thousand five hundred dollars ($2,500.00) for each violation.  All monies collected pursuant to this section shall be retained by the Alabama Department of Public Health and may be expended for any legal purpose including, but not limited to, operational expenses of the department.

> (b) Any professional society within this state comprised primarily of physicians, which takes formal disciplinary action against a member shall report the action to the Alabama State Board of Medical Examiners, when the action taken is related to professional ethics, negligence or incompetence in the practice of medicine, moral turpitude, sexual misconduct, abusive or disruptive behavior, or drug or alcohol abuse.  This report shall be in writing and made within 30 days of the action.

(c) *Any report made pursuant to this section shall be privileged from discovery* and the individual making the report shall be immune from liability.

Ala. Code § 34-24-59 (1975) (Repl. Vol. 2002) (emphasis supplied).  Yet again, Crestwood fails to offer any evidence that responding to plaintiff's subpoena will require it to produce any report made to the Alabama State Board of Medical Examiners.  Its equivocal assertion — that "any reports that *may* have been made by the hospital relating to any disciplinary actions, *if any exists*[sic]*,* of Dr. Gaillard, would be privileged from discovery pursuant to this statute"[14] — is insufficient to carry its burden of proving the privilege applies.  Therefore, plaintiff's subpoena to Crestwood will not be quashed on the basis that the information sought therein is protected by Ala. Code § 34-24-59.

**D.**     *Gaillard's Other Arguments*

Gaillard argues that, if any of the hospitals respond to plaintiff's subpoenas, they will necessarily be required to produce private information about his patients.[15] The court does not understand how records of Gaillard's disciplinary history,

---

[14]Doc. no. 58 (Crestwood's motion to quash), at ¶ 7.

[15]Gaillard cites the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-91, 110 Stat. 1936 (1996); portions of the Social Security Act, 42 U.S.C. § 1396a(a)(7); 42 U.S.C. § 290dd-2, which regulates the confidentiality of substance abuse programs funded, directly or indirectly, by the United States; the Privacy Act of 1974, 5 U.S.C. § 552a; and the common law psychiatrist-patient privilege.  *See* doc. no. 56 (Gaillard's motion to quash), at ¶¶ 2a-5.

including complaints of sexual harassment *by other employees* would necessitate the disclosure of private *patient* information.  Indeed, plaintiff explicitly states that she "is not seeking any patient information, records or data . . . ."[16]  Accordingly, the subpoenas will not be quashed in order to protect patient information.  The court is amenable, however, to entry of a protective order, agreed to by plaintiff and Gaillard, that would protect any sensitive data concerning patients in the records that may be produced pursuant to the subpoenas.[17]

Finally, Gaillard objects that the subpoenas "are essentially a political 'smear campaign' upon his professional reputation," or an attempt to spread false charges against Gaillard throughout the medical community.[18]  To the contrary, the court concludes that the information requested in the subpoenas is relevant to plaintiff's defense against Gaillard's counterclaims for libel and slander.

E.   *Conclusion and Order*

Based on the foregoing, the motions to quash filed by defendant Henry

---

[16]Doc. no. 61 (plaintiff's response to Gaillard's motion to quash), at 6.

[17]Plaintiff asserts that any confidential information would be protected by the Consent Protective Order and the HIPAA Qualified Protective Order, both of which were entered in this action on April 24, 2007.  It is questionable, however, whether these protective orders would extend to health information regarding a non-party, or to documents produced by a non-party.  *See* doc. no. 33 (HIPAA Qualified Protective Order), at 1 (granting the parties the right to obtain health information regarding "any individual *who is a party* to this action") (emphasis supplied); doc. no. 34 (Consent Protective Order), at ¶ ("This Order shall govern all documents produced *by the parties* in this action.") (emphasis supplied).

[18]Doc. no. 56 (Gaillard's motion to quash), at ¶ 7.

Gaillard, and by non-parties Jackson County Hospital and Crestwood Medical Center

are DENIED, and the documents sought must be produced forthwith.

DONE this 2nd day of October, 2007.

United States District Judge