FILED
2007 Oct-05 PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 'C'

# FREEDOM COURT REPORTING

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  FOR THE NORTHERN DISTRICT OF ALABAMA
3     NORTHEASTERN DIVISION
4
5  NINA BENNETT,
6
7     Plaintiff,
8
9  VS.   CIVIL ACTION
10    NO. CV-04777-CLS
11
12 DECATUR GENERAL HOSPITAL,
13 APOLLOMD PHYSICIAN SERVICES
14 of AL, LLC, d/b/a EMERGENCY MEDICAL
15 MANAGEMENT, and
16 DR. HENRY GAILLARD,
17
18    Defendants.
19
20    DEPOSITION OF NINA BENNETT
21
22    STIPULATIONS
23    IT IS STIPULATED AND

Page 2

1  AGREED, by and between the parties,
2  through their respective counsel,
3  that the deposition of NINA BENNETT
4  may be taken before Sunnie E.
5  Gillespie, Commissioner, State of
6  Alabama at Large, at the law offices
7  of Lehr, Middlebrooks & Vreeland,
8  2021 Third Avenue North, Birmingham,
9  Alabama, on the 30th day of August,
10 2007, commencing at or about 9:30
11 a.m.
12    IT IS FURTHER STIPULATED
13 AND AGREED that the reading and
14 signature to the deposition by the
15 witness is waived, said deposition to
16 have the same force and effect as if
17 full compliance had been had with all
18 laws and rules of court relating to
19 taking of depositions.
20    IT IS FURTHER STIPULATED
21 AND AGREED that it shall not be
22 necessary for any objections to be
23 made by counsel as to any questions,

Page 3

1  except as to form or leading
2  questions, and that counsel for the
3  parties may make objections and
4  assign grounds at the time of the
5  trial, or at the time said deposition
6  is offered in evidence, or prior
7  thereto.
8     IT IS FURTHER STIPULATED
9  AND AGREED that notice of filing of
10 the deposition by the Commissioner is
11 waived.

Page 4

1     I N D E X
2
3  EXAMINATION BY:   PAGE NO.
4  Mr. Middlebrooks   10-251
5  Mr. Crum   251-299
6  Ms. Baswell-Guthrie   299-337
7
8     E X H I B I T S
9  DEFENDANT'S EXHIBIT NO.   MARKED
10 1 - MySpace document   37
11 2 - Interrogatories   44
12 3 - Answers to Interrogatories   44
13 4 - Supplemental Answers to
14    Discovery   44
15 5 - Supplemental Answers to
16    Discovery Number 10   44
17 6 - Answer to defendant
18    Gaillard's First Set
19    of Interrogatories   44
20 7 - Application for
21    Employment   49
22 8 - Document - New
23    Employee Orientation   50

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 5

| | |
|---|---|
| 9 - | Payroll/Personnel |
| | Change Notice                55 |
| 10 - | Document - Weekend |
| | Program                      57 |
| 11 - | Personnel Change |
| | Notice                       61 |
| 12 - | Document from |
| | Administrative |
| | Policy Manual                71 |
| 13 - | Document from |
| | Administrative |
| | Policy Manual                72 |
| 14 - | Staff Meeting |
| | document                     74 |
| 15 - | Correspondence from |
| | Nina Bennett                 77 |
| 16 - | Document - EEOC             175 |
| 17 - | Dismissal and |
| | Notice of Rights            182 |
| 18 - | Complaint                   185 |
| 19 - | Notes from Meeting          200 |
| 20 - | Notes from Meeting          204 |
| 21 - | Plaintiff's Rule 26 |

Page 6

Initial Disclosure       210

BEFORE: Sunnie E. Gillespie
        Commissioner

Page 7

APPEARING ON BEHALF OF THE PLAINTIFF:
  MR. BUDDIE R. BROWN, JR.
  Brent A. King Law Firm
  215 2nd Avenue SE
  Decatur, Alabama 35602

APPEARING ON BEHALF OF THE DEFENDANT
DECATUR GENERAL HOSPITAL:
  MR. DAVID J. MIDDLEBROOKS
  Lehr Middlebrooks & Vreeland,
  P.C.
  2021 Third Avenue North
  Birmingham, Alabama 35203

APPEARING ON BEHALF OF THE DEFENDANTS
APOLLOMD & NORTH ALABAMA EMERGENCY
PHYSICIANS:
  MR. RICHARD E. CRUM and
  MR. J.D. MENDHEIM
  Cobb, Shealy, Crum, Derrick &
   Pike, P.A.
  P.O. Box 6346
  Dothan, Alabama 36302-6346

Page 8

APPEARING ON BEHALF OF THE DEFENDANT
DR. HENRY GAILLARD:
  MS. CHERYL BASWELL-GUTHRIE
  Baswell-Guthrie, P.C.
  3300 Westmill Drive, S.W.
  Huntsville, Alabama 35805

ALSO PRESENT:
  Ms. Karla Gray

### Page 9

1  I, Sunnie E. Gillespie,
2  Commissioner, State of Alabama at
3  Large, acting as commissioner,
4  certify that on this date, in
5  accordance with the Federal Rules of
6  Civil Procedure and the foregoing
7  stipulations of counsel, there came
8  before me at the law offices of Lehr
9  Middlebrooks & Vreeland, 2021 Third
10 Avenue North, Birmingham, Alabama, on
11 the 30th day of August, 2007, NINA
12 BENNETT, witness in the above cause
13 for oral examination, whereupon the
14 following proceedings were had:
15
16      NINA BENNETT,
17 having been first duly sworn, was
18 examined and testified as follows:
19      THE COURT REPORTER: Usual
20 stipulations?
21      MS. BASWELL-GUTHRIE: Yes.
22      MR. MIDDLEBROOKS: Yes.
23      MR. CRUM: Yes, ma'am.

### Page 10

1       MR. BROWN: Sure.
2
3  EXAMINATION BY MR. MIDDLEBROOKS:
4    Q. Ms. Bennett, state your
5  full name for the record, please.
6    A. Nellina Bennett.
7    Q. Have you ever been known by
8  any other name?
9    A. Yes, Nina Bennett.
10   Q. Any other names?
11   A. Nina Bramlett, Nina
12 Jarrett, Nina Sharpley. And,
13 actually, right now my last name now
14 Puryear, P-U-R-Y-E-A-R.
15   Q. And I've got all your names
16 that you've ever had, now?
17   A. Yes, sir.
18   Q. During the relevant time of
19 these events, at that time you were
20 Nina Bennett; is that correct?
21   A. Yes, sir.
22   Q. So a number of the
23 documents and things will refer to

### Page 11

1  Nina Bennett. If I refer to you as
2  Ms. Bennett. Or we refer to
3  documents about Ms. Bennett, you're
4  not going to be offended by that, are
5  you?
6    A. No, sir.
7    Q. But your current name is
8  Mrs. Puryear?
9    A. Yes.
10   Q. If I just go with Ms.
11 Bennett throughout the deposition,
12 will that be okay?
13   A. Yes.
14   Q. All right. Ms. Bennett, my
15 name is David Middlebrooks. I'm one
16 of the attorneys representing Decatur
17 General Hospital in the lawsuit that
18 you've filed against them. And, of
19 course, you filed a lawsuit as well
20 against ApolloMD, North Alabama
21 Emergency Physicians, and Dr.
22 Gaillard, himself. Just to make sure
23 we know who everybody is, you

### Page 12

1  understand that I represent Decatur
2  General, your former employer?
3    A. My current employer?
4    Q. Your current employer,
5  that's true.
6    A. Yes.
7    Q. And that if I refer to
8  Apollo, you understand I'm referring
9  to Dr. Gaillard's previous employer?
10   A. Yes.
11   Q. And if I refer to Dr.
12 Gaillard, you understand I'm
13 referring to him individually?
14   A. Yes.
15   Q. And you understand that
16 each of those entities or individuals
17 are represented by counsel here today
18 as well?
19   A. Yes.
20   Q. Now, I'll be asking you
21 some questions about your claims
22 against Decatur General, and then
23 they will have some questions about

Page 13

1  your claims against their
2  representative clients. You
3  understand you're under oath today
4  to tell the truth just as you would
5  be under oath at trial?
6     A. Yes.
7     Q. And the penalty not to
8  abide by that oath could be perjury?
9     A. Yes.
10    Q. If you don't understand any
11 of my questions, if you'll let me
12 know I'll be glad to repeat or
13 rephrase it.
14    A. Okay.
15    Q. And if I do ask a question
16 and you respond to it, I'm going to
17 assume you understood it and you're
18 giving me your full, and truthful,
19 and complete answer; is that fair
20 enough?
21    A. Yes.
22    Q. If you want to take a break
23 at some point, let me know, and we'll

Page 14

1  be glad to do so. I do ask, however,
2  if I've got a question on the table,
3  or one of the other attorneys has a
4  question on the table, if you would
5  answer that question before we take a
6  break; is that fair enough?
7     A. Yes.
8     Q. Is there any reason today
9  that you would be impaired by
10 medication or otherwise that would
11 affect your ability to testify or
12 recall events?
13    A. No.
14    Q. Are you on any medication
15 today?
16    A. Today, no.
17    Q. Have you been on any
18 medication in the past week?
19    A. Yes.
20    Q. What medication would that
21 be?
22    A. Concerta, Singulair, and
23 Zyrtec.

Page 15

1     Q. Zyrtec is for allergies?
2     A. Yes, and also my asthma.
3     Q. What is Singulair?
4     A. That's for allergies and my
5  asthma.
6     Q. And the first one?
7     A. Concerta is for ADHD.
8     Q. Sometimes referred to as
9  attention deficit disorder?
10    A. Yes, with hyperactivity.
11    Q. Is there any reason you
12 wouldn't be on those medications
13 today if you were taking them
14 otherwise?
15    A. I normally only take my
16 Concerta when I need to focus, such
17 as when I go to work. This morning I
18 was just up really early and didn't
19 take my allergy medicines.
20    Q. Will your failure to take
21 the Concerta affect your ability to
22 focus today in responding to these
23 questions?

Page 16

1     A. No.
2     Q. You understand that we will
3  count on these questions in terms of
4  the basis of your knowledge about
5  your claims and what went on at the
6  hospital with Dr. Gaillard?
7     A. Yes.
8     Q. What did you do to prepare
9  for this deposition?
10    A. I didn't do anything to
11 prepare today. I'm just -- I'm here.
12    Q. Did you review any
13 documents?
14    A. No.
15    Q. When is the last time you
16 reviewed any documents related to
17 your claims against any of the
18 defendants?
19    A. Whenever the last time that
20 I submitted some answers.
21    Q. And when you say answers,
22 you're talking about written answers?
23    A. Yes.

FREEDOM COURT REPORTING

Page 17

1  Q. And we'll come to those in
2  a minute and I'll show you a copy of
3  those so you can verify those. Did
4  you listen to any kind of audio
5  recordings or watch anything related
6  to your claims --
7  A. No.
8  Q. -- in this case?
9  A. No.
10  Q. Do you have any kind of
11  recordings at all related to your
12  claims in this case?
13  A. No.
14  Q. Have you ever tape recorded
15  Dr. Gaillard or any former person on
16  the premises at Decatur General
17  Hospital?
18  A. No.
19  Q. Now, again, you've sued
20  three different defendants, right;
21  you understand that?
22  A. Yes.
23  Q. Decatur General being one

Page 18

1  of them. Just in your own words --
2  and we'll go into the details of your
3  claims, and I'll give you that
4  opportunity, but why have you sued
5  Decatur General?
6  A. Because I feel that I am an
7  employee of Decatur General. They
8  had a responsibility to me, foremost,
9  above anyone else. I was not the
10  first person to make a claim to
11  Decatur General. So, therefore, I
12  hold them responsible.
13  Q. Things that you complained
14  that were done wrong to you during
15  your employment at Decatur General,
16  who is it you claim did those things?
17  A. You're going to have to get
18  a little bit more specific. When
19  you're saying the things that I
20  claim, which things?
21  Q. Well, you've claimed that
22  you've been subjected to offensive
23  conduct by Dr. Gaillard?

Page 19

1  A. Uh-huh.
2  Q. Is that yes? You have to
3  answer --
4  A. Yes.
5  Q. -- so the court reporter
6  can pick that up.
7  A. Yes.
8  Q. And we'll go into the
9  details of what you're claiming, but
10  that's both in terms of verbal, in
11  terms of some touching?
12  A. Yes.
13  Q. Is there anyone else that
14  engaged in any conduct that you found
15  offensive, of that nature?
16  A. No.
17  Q. Who else do you have a
18  complaint about related to your
19  employment at Decatur General, other
20  than Dr. Gaillard?
21  A. I don't understand what you
22  mean by that question.
23  Q. Do you have a complaint

Page 20

1  about what anybody else did out there
2  at Decatur General Hospital, other
3  than Dr. Gaillard?
4  A. What -- are you referring
5  to the way it was handled, or.
6  Q. That aspect as well.
7  Anything that you are complaining
8  about, this whole scenario. I'm just
9  trying to understand who the players
10  are.
11  A. I'm sorry, but I'm really
12  trying to understand what exactly it
13  is that you're wanting me to answer.
14  Q. Who are you mad at?
15  A. Well, I'm not really mad.
16  Disappointed would be a more
17  appropriate word.
18  Q. Who are you disappointed
19  in?
20  A. Decatur General.
21  Q. Who at Decatur General?
22  A. I guess you would say the
23  powers that be.

5 (Pages 17 to 20)

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 21

1  Q. Who would those be?
2  A. Whoever made the decision
3  to let him to continue to work there.
4  Q. Do you have any idea who
5  that is?
6  A. No, I don't know. I don't
7  know who makes that decision.
8  Q. Can you name anybody at
9  Decatur General, by name, that you
10 would say disappointed you?
11 A. I don't know who makes the
12 decisions.
13 Q. So, the answer is no, you
14 can't?
15 A. I don't know who makes the
16 decisions, so I can't.
17 Q. All right. Is there anyone
18 at Apollo Medical that disappointed
19 you?
20 A. Yes.
21 Q. Who?
22 A. That would be Dr. Pool,
23 P-O-O-L.

Page 22

1  Q. And how did he disappoint
2  you?
3  A. Well, he didn't follow
4  through enough, I guess.
5  Q. Anyone else at ApolloMD who
6  disappointed you?
7  A. Those are -- that's their
8  direct supervisor, so that's what I
9  would have to go with.
10 Q. All right. So in terms of
11 what we can identify thus far, then,
12 Dr. Gaillard -- am I pronouncing the
13 doctor's name right?
14 A. It's Gaillard.
15    MS. BASWELL-GUTHRIE:
16 Gaillard.
17 Q. (BY MR. MIDDLEBROOKS:)
18 Sorry. Dr. Gaillard is the only
19 person who said things or did things
20 physically that you found to be
21 offensive, correct?
22 A. Uh-huh.
23 Q. Yes?

Page 23

1  A. Yes.
2  Q. And, then, there are some
3  at Decatur General that you aren't
4  able to name at this point, that you
5  say disappointed you about how they
6  handled your complaints?
7  A. Yes.
8  Q. Is there anything else that
9  you've got a complaint about as to
10 Decatur General, other than that?
11 A. Other than after the
12 numerous complaints he was still
13 employed there?
14 Q. Anything in how they
15 handled your complaints?
16 A. I think that would probably
17 be enough.
18 Q. After Dr. Gaillard was
19 gone, do you have any complaints
20 about your employment at Decatur
21 General?
22 A. No.
23 Q. And, then, with respect to

Page 24

1  ApolloMD, the only person you are
2  able to name today that you say
3  disappointed you how he handled the
4  matter, is Dr. Pool?
5  A. Yes.
6  Q. And other than as related
7  to these issues with Dr. Gaillard,
8  have you had anything else related to
9  Dr. Pool that you would say that you
10 are disappointed in his behavior, or
11 conduct, or what have you?
12 A. No.
13 Q. So, if we identify the
14 timeframe of when this conduct with
15 Dr. Gaillard went on -- Gaillard?
16 A. Gaillard.
17 Q. Gaillard. But you who know
18 who I'm talking about, right?
19 A. Yes.
20 Q. Dr. Gaillard went on in the
21 period of your complaint, that's
22 going to be the finite timeframe
23 we're speaking of, correct?

FREEDOM COURT REPORTING

Page 25

1    A. Yes.
2    Q. Okay. So we'll be able to
3 identify some dates as to when this
4 behavior started and when it ended?
5    A. Yes.
6    Q. And before that behavior
7 started, everything was okay at
8 Decatur General?
9    A. Yes.
10   Q. And after that behavior
11 ended, everything was okay at Decatur
12 General?
13   A. Yes.
14   Q. Just so we go ahead and
15 have the parameters of the dates
16 then, when is the first time that Dr.
17 Gaillard did anything that you found
18 to be offensive?
19   A. I'm not going to be able to
20 specify a date, because there were so
21 numerous things that had went on for
22 so long before it actually came to a
23 head and I actually complained about

Page 26

1 it.
2    Q. Okay. And we can agree it
3 ended, though, in March, 2006?
4    A. Yes.
5    Q. We'll come back and explore
6 about the beginning of that process
7 then. Is it correct that you are of
8 the feeling that the only solution to
9 your problems related to Dr. Gaillard
10 was that he had to be gone from
11 Decatur General's premises?
12   A. Yes.
13   Q. There was no compromise
14 short of that?
15   A. No. It had already been
16 addressed with him and didn't resolve
17 the issue, so, no.
18   Q. Did you have any objection
19 to the efforts being made to try to
20 resolve it short of him having to
21 leave the premises?
22   A. Yes.
23   Q. You didn't even want in the

Page 27

1 first place there to be any effort
2 made to try to resolve it short of
3 making the Doctor leave?
4    A. No, that's not true. They
5 did address the issue with him, at
6 which time he became volatile, then
7 afterwards became a little bit easier
8 to work with thereafter, and then it
9 started again, at which time I was
10 put on administrative leave.
11   Q. Okay. And I'll give you
12 your interrogatory answers in a
13 minute so we can go through all of
14 that in detail. In terms of things
15 that you might have related to your
16 claims in this case, did you keep a
17 diary?
18   A. No.
19   Q. Did you keep any notes?
20   A. No.
21   Q. What, if anything, did you
22 have in the way of something
23 tangible, that is something you could

Page 28

1 hold in your hand, that supports your
2 claims in this case?
3    A. I don't have anything.
4    Q. Do you know of anybody ever
5 tape recording another person from
6 the premises of Decatur General
7 Hospital?
8    A. Not that I know of, no.
9    Q. Let me get a little bit of
10 background information. Where do you
11 live?
12   A. At 802 14th Avenue,
13 Decatur.
14   Q. How long have you lived
15 there?
16   A. I guess approximately three
17 years.
18   Q. Anyone reside with you
19 there?
20   A. Yes.
21   Q. Who?
22   A. My husband.
23   Q. And his name?

Page 29

1   A. Is Derek Puryear.
2   Q. All right.
3   A. And my youngest daughter.
4   Q. Her name?
5   A. Lauren Jarrett.
6   Q. How old is she?
7   A. She's 18.
8       MR. CRUM: How do you spell
9   your husband's name, please, ma'am?
10  A. First or last?
11      MR. CRUM: Last.
12  A. P-U-R-Y-E-A-R.
13      MR. CRUM: Thank you.
14  A. You're welcome.
15  Q. (BY MR. MIDDLEBROOKS:)
16  Does he work outside the home?
17  A. Yes, he does. He works at
18  Redstone Arsenal.
19  Q. What does he do there?
20  A. He's a security guard.
21  Q. Is this a premises you rent
22  or you own?
23  A. It's a rent to own.

Page 30

1   Q. And where did you live
2   before that?
3   A. At 1206 Beech Street
4   Southeast.
5   Q. Beech?
6   A. Uh-huh.
7   Q. How long did you live
8   there?
9   A. About two years.
10  Q. How long have you been
11  married to Mr. Puryear?
12  A. A year.
13  Q. How long has he resided
14  with you?
15  A. A year.
16  Q. Have you been married
17  before?
18  A. Yes.
19  Q. And who have you been
20  married before to?
21  A. Timothy Bramlett.
22  Q. Who else?
23  A. Oh, I'm sorry. I thought

Page 31

1   you were still writing. Carl
2   Jarrett.
3   Q. Anyone else?
4   A. Yeah, Kevin Sharpley.
5   Q. Anyone else?
6   A. No.
7   Q. All of these end in
8   divorce?
9   A. Yes.
10  Q. What was the reason for
11  divorcing Mr. Sharpley?
12  A. Irreconcilable differences.
13  Q. When was that?
14  A. I think that was '99.
15  Q. And Mr. Jarrett, when were
16  you divorced from him?
17  A. 19 -- 1990.
18  Q. Mr. Bramlett, when were you
19  divorced from him?
20  A. '88.
21  Q. How old are you?
22  A. 41.
23  Q. And did you have children

Page 32

1   by Mr. Sharpley?
2   A. No.
3   Q. What about Mr. Jarrett?
4   A. One.
5   Q. Who was that child?
6   A. Lauren.
7   Q. The one who lives with you
8   now?
9   A. Uh-huh.
10  Q. Is that yes?
11  A. Yes.
12  Q. Do you have children by
13  Mr. Bramlett?
14  A. Yes.
15  Q. Who are they?
16  A. It's a son. His name is
17  Timothy Scott.
18  Q. Any other children?
19  A. Not by Mr. Bramlett, no.
20  Q. By Mr. Puryear?
21  A. No.
22  Q. Do you have children by
23  anyone else?

8 (Pages 29 to 32)

Page 33

```
1    A. Yes.
2    Q. Who?
3    A. I have a daughter by Tim
4  Nichols. Her name is Tiffany.
5    Q. How old is she?
6    A. She's 20.
7    Q. Mr. Nichols was never your
8  husband, though?
9    A. No.
10   Q. Which kids did you raise?
11   A. All of them.
12   Q. Where does Mr. Bramlett
13 work now?
14   A. He owns Bramlett Autos in
15 Decatur.
16   Q. How about Mr. Jarrett?
17   A. He just retired with
18 Delphi.
19   Q. With where?
20   A. Delphi -- General Motors.
21   Q. And Sharpley?
22   A. I have no idea.
23   Q. And Mr. Nichols?
```

Page 34

```
1    A. Works for General Motors in
2  Bowling Green, Kentucky.
3    Q. Are you still on speaking
4  terms with any of your former
5  husbands?
6    A. Yes.
7    Q. All of them?
8    A. Yes.
9    Q. Why did you and Mr. Jarrett
10 divorce?
11   A. He has a volatile temper.
12   Q. Abusive?
13   A. (Witness nods head.)
14   Q. Is that yes?
15   A. Yes.
16   Q. And Mr. Bramlett, why did
17 you divorce him?
18   A. We were just young.
19   Q. Did you ask for any of
20 these divorces?
21   A. Yes.
22   Q. Have you been in any
23 lawsuit other than those divorces?
```

Page 35

```
1    A. Yes.
2    Q. What else have you been in
3  lawsuits for?
4    A. When Mr. Bramlett and I
5  were teenagers, we were involved in a
6  car accident with a road raider, at
7  which time I sued Morgan County.
8    Q. Did you win recovery?
9    A. Yes.
10   Q. What was your recovery?
11   A. At this time I don't -- I
12 don't remember.
13   Q. Did you settle?
14   A. It was actually a
15 settlement.
16   Q. Did you suffer any injuries
17 in the accident?
18   A. Yes.
19   Q. What was it?
20   A. At that time I had broken
21 my ankle in three places, where they
22 had to put metal in there and put 119
23 stitches in my face, and I was
```

Page 36

```
1  hospitalized for three weeks.
2    Q. Any other lawsuits?
3    A. No.
4    Q. Do you suffer any residual
5  effects from those injuries?
6    A. No.
7    Q. Have you ever been
8  arrested?
9    A. Yes.
10   Q. For what?
11   A. Failure to pay on a
12 speeding ticket.
13   Q. Any other reason?
14   A. No.
15   Q. Have you ever testified in
16 court?
17   A. Yes.
18   Q. For what reasons?
19   A. To be declared an adult in
20 that lawsuit in Morgan County.
21   Q. Any other reasons?
22   A. No.
23   Q. Have you ever been deposed
```