FILED
2007 Oct-05 PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 'D'

CONDENSED TRANSCRIPTS

OF DEPOSITIONS TAKEN

ON SEPTEMBER 5th, 2007

DEPOSITIONS OF:

✶ KARLA M. GRAY
NINA BENNETT, VOLUME II

*************************

NINA BENNETT, PLAINTIFF

VS

DECATUR GENERAL HOSPITAL, APOLLOMD PHYSICIAN SERVICES AL, LLC, d/b/a EMERGENCY MEDICAL MANAGEMENT, and DR. HENRY GAILLARD, DEFENDANTS

Reported by: Tina E. Kent, CSR

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

NINA BENNETT,
    Plaintiff,

vs.        Civil Action Case No.:
           CV-06-S-4777-NE

DECATUR GENERAL HOSPITAL,
APOLLOMD PHYSICIAN SERVICES
OF AL, LLC, d/b/a EMERGENCY MEDICAL
MANAGEMENT and DR. HENRY GAILLARD,
    Defendants.

*************************************

DEPOSITION OF KARLA McNUTT GRAY

*************************************

Was taken before Tina E. Kent, Certified Shorthand Reporter and Notary Public for the State of Alabama at Large, on Wednesday, September 5th, 2007, at 1:04 p.m., at the offices of North Alabama Reporting Service, 432 East Moulton Street, Decatur, Alabama.

**Page 2**

STIPULATIONS

IT IS STIPULATED AND AGREED by and between the parties through their respective counsel that said deposition may be taken by me on this date.

IT IS FURTHER STIPULATED AND AGREED that the signature to and the reading of the deposition by the witness is not waived.

IT IS FURTHER STIPULATED AND AGREED that it shall not be necessary for any objections to be made by counsel to any questions, except as to form or leading questions, and that counsel for the parties may make objections and assign grounds at the time of the trial, or at the time said deposition is offered in evidence, or prior thereto.

IT IS FURTHER STIPULATED AND AGREED that the notice of filing of the deposition by the Commissioner is waived.

**Page 3**

APPEARANCES

FOR THE PLAINTIFF, NINA BENNETT:

Brent A. King, Attorney at Law
Buddie R. "Buzz" Brown, Jr., Attorney At Law
215 Second Avenue, Southeast
Decatur, Alabama 35601
(256) 355-9517

FOR THE DEFENDANT, DECATUR GENERAL HOSPITAL:

Sally Broatch Waudby, Attorney at Law
LEHR, MIDDLEBROOKS & VREELAND, P.C.
2021 Third Avenue North
Post Office Box 11945
Birmingham, Alabama 35203
(205) 326-3002

FOR THE DEFENDANTS, APOLLOMD PHYSICIAN SERVICES OF AL, LLC, d/b/a EMERGENCY MEDICAL MANAGEMENT:

J.D. Mendheim, Attorney at Law
Richard E. Crum, Attorney at Law
SHEALY, CRUM & PIKE, P.C.
2346 West Main Street, Suite 1
Post Office Box 6346
Dothan, Alabama 36302-6346
(334) 677-3000

**Page 4**

APPEARANCES CONTINUED:

FOR THE DEFENDANT, DR. HENRY GAILLARD:

Cheryl Baswell-Guthrie, Attorney at Law
BASWELL-GUTHRIE, P.C.
3300 Westmill Drive, Southwest
Huntsville, Alabama 35805
(256) 288-0130

## Page 5

TABLE OF CONTENTS

EXAMINATION INDEX

KARLA McNUTT GRAY
    BY MR. KING . . . . . . . . . . 8
    BY MR. CRUM . . . . . . . . . 50

EXHIBIT INDEX

PLAINTIFF'S
A   Decatur General Hospital   11
    Administrative Policy Manual, T00241
    - T00242 / 2-Page Exhibit

2   In-service Handout, D00014 - D00018 /   29
    5-Page Exhibit

3   Addenda, Professional Services   40
    Agreement, Emergency Department
    D00047 - D00051 / 5-Page Exhibit

4   E-mail to Pat Hudson, D00031 - D00032   45
    / 2-Page Exhibit

5   Documents Decatur General Provided to   47
    Counsel, D00001 - D00007 and D00019 -
    D00051 / 40-Page Exhibit

REPORTER'S CERTIFICATE PAGE . . . . . . 54

## Page 6

OBJECTION INDEX

BY MS. WAUDBY . . . . . . . . . 12
BY MS. WAUDBY . . . . . . . . . 12
BY MS. WAUDBY . . . . . . . . . 12
BY MS. WAUDBY . . . . . . . . . 13
BY MS. WAUDBY . . . . . . . . . 13
BY MS. WAUDBY . . . . . . . . . 14
BY MS. BASWELL-GUTHRIE . . . . 14
BY MS. WAUDBY . . . . . . . . . 15
BY MS. WAUDBY . . . . . . . . . 15
BY MS. WAUDBY . . . . . . . . . 16
BY MS. WAUDBY . . . . . . . . . 17
BY MS. WAUDBY . . . . . . . . . 17
BY MS. WAUDBY . . . . . . . . . 19
BY MS. WAUDBY . . . . . . . . . 20
BY MS. WAUDBY . . . . . . . . . 20
BY MS. WAUDBY . . . . . . . . . 20
BY MS. WAUDBY . . . . . . . . . 21
BY MS. WAUDBY . . . . . . . . . 22
BY MS. WAUDBY . . . . . . . . . 23
BY MS. WAUDBY . . . . . . . . . 23
BY MS. BASWELL-GUTHRIE . . . . 24
BY MS. WAUDBY . . . . . . . . . 24
BY MS. WAUDBY . . . . . . . . . 25
BY MS. WAUDBY . . . . . . . . . 26
BY MS. BASWELL-GUTHRIE . . . . 26
BY MS. WAUDBY . . . . . . . . . 26
BY MS. WAUDBY . . . . . . . . . 27
BY MS. BASWELL-GUTHRIE . . . . 27
BY MS. WAUDBY . . . . . . . . . 27
BY MS. BASWELL-GUTHRIE . . . . 27
BY MS. WAUDBY . . . . . . . . . 28
BY MS. BASWELL-GUTHRIE . . . . 29
BY MS. WAUDBY . . . . . . . . . 30
BY MS. WAUDBY . . . . . . . . . 30
BY MS. WAUDBY . . . . . . . . . 30
BY MS. WAUDBY . . . . . . . . . 31
BY MS. WAUDBY . . . . . . . . . 31
BY MS. WAUDBY . . . . . . . . . 32
BY MS. WAUDBY . . . . . . . . . 33
BY MS. BASWELL-GUTHRIE . . . . 34

## Page 7

OBJECTION INDEX CONTINUED:

BY MS. WAUDBY . . . . . . . . . 35
BY MS. WAUDBY . . . . . . . . . 35
BY MS. WAUDBY . . . . . . . . . 37
BY MS. WAUDBY . . . . . . . . . 39
BY MS. WAUDBY . . . . . . . . . 39
BY MS. WAUDBY . . . . . . . . . 42
BY MS. WAUDBY . . . . . . . . . 42
BY MS. WAUDBY . . . . . . . . . 43
BY MS. BASWELL-GUTHRIE . . . . 43
BY MS. WAUDBY . . . . . . . . . 44
BY MS. WAUDBY . . . . . . . . . 45
BY MS. WAUDBY . . . . . . . . . 45
BY MS. WAUDBY . . . . . . . . . 50

## Page 8

    I, TINA ELLER KENT, a Certified Shorthand Reporter of the State of Alabama at Large, acting as Commissioner, certify that on this date, as provided by the Alabama Rules of Civil Procedure and the foregoing stipulations of counsel, there came before me this witness in the above cause, for oral examination, whereupon the following proceedings were had:

KARLA McNUTT GRAY

being first duly sworn, was

examined and testified as follows:

    THE COURT REPORTER: Usual stipulations?

    MS. WAUDBY: We'd like to read and sign, but otherwise, yes.

EXAMINATION

BY MR. KING:

    Q. I'm Brent King.

    A. Hi.

    Q. I practice here in Decatur, Alabama. Could you state your full name, please.

Page 9

```
1    A.  Karla McNutt Gray.
2    Q.  Okay.  And I assume you work at Decatur
3  General Hospital?
4    A.  I do.
5    Q.  What's your position?
6    A.  Director of Human Resources.
7    Q.  How long have you been employed there?
8    A.  At Decatur General?
9    Q.  Yes.
10   A.  Since 1999.
11   Q.  Okay.  Were you working in that same
12 capacity in 2005 and 2006?
13   A.  As director?
14   Q.  Yes, ma'am.
15   A.  Yes, I was.
16   Q.  Have you ever had your deposition taken
17 before?
18   A.  No.
19   Q.  Okay.  Have you ever testified in court?
20   A.  No.
21   Q.  Your attorney may have discussed this with
22 you, but I just need to go over two or three
23 things.  The court reporter doesn't pick up nods
```

Page 10

```
1  and shakes of the head, so if you could please
2  answer the question affirmatively or negatively, we
3  would appreciate that.  Sometimes they do say nod
4  of the head, but we don't always pick up on that.
5  And since this deposition may be used in trial, if
6  you're unavailable or for impeachment purposes of
7  your testimony, I just want you to be made aware
8  that this testimony may be used at trial.  And I
9  need to ask you -- is that yes, you understand?
10   A.  Yes, I understand.
11   Q.  Okay.  I don't mean to get personal, but
12 are you taking any kind of medication that could
13 alter your testimony or your recollection today?
14   A.  No, I'm not.
15   Q.  Okay.  Do you have any personal knowledge
16 of the existence of a sexual harassment policy at
17 Decatur General?
18   A.  Yes.  We have a policy.
19   Q.  Was there a policy in place say September
20 1st, 2005?
21   A.  Yes, there was.
22   Q.  I'm going to show you a couple of
23 documents, I'll mark them Plaintiff's Exhibit A.
```

Page 11

```
1         MS. WAUDBY:  Do you want the
2    highlighting on that exhibit copy?
3         MR. KING:  Well, I don't really
4    have a choice, but that's what I'm going
5    to address, so . . .
6         (Whereupon, Plaintiff's Exhibit A
7         was marked for identification
8         and attached hereto.)
9  BY MR. KING:
10   Q.  That's an administrative policy manual, I
11 marked it Plaintiff's Exhibit A, it says effective
12 date, 12/06/99, revised 01/17/03.  Does this
13 document look familiar to you?
14   A.  Yes.  It is our policy.
15   Q.  Okay.  Was this the policy that was in
16 place as of say August 1st, 2005?
17   A.  Yes.
18   Q.  Okay.  Does the policy state, and this is
19 a quote, "Similarly, Decatur General will not
20 tolerate harassment of its employees by
21 non-employees with whom the hospital employees have
22 a business, service, or professional relationship"?
23   A.  It does.
```

Page 12

```
1         MS. WAUDBY:  Object to the form.
2  BY MR. KING:
3    Q.  And I'll show this to you if you need to
4  look at this.  Does it also state, "The hospital's
5  policy is that any form of harassment is completely
6  unacceptable and will not be tolerated"?
7    A.  Yes.
8         MS. WAUDBY:  Objection to form.
9         MS. BASWELL-GUTHRIE:  Object to
10   the form.
11        MS. WAUDBY:  Give me a second for
12   my objection.
13        THE WITNESS:  Okay.
14 BY MR. KING:
15   Q.  And then under "Definition Of Harassment,"
16 does it say, "Sexual harassment may also consist of
17 unwelcome sexual advances, requests for sexual
18 favors, or other verbal or physical conduct of a
19 sexual nature that creates an offensive or hostile
20 working environment"?
21        MS. WAUDBY:  Objection to form.
22 BY MR. KING:
23   Q.  Does it say that?
```

**Page 13**

1   A. It does.
2   Q. Okay. So Decatur General's prohibition
3   against harassment, as it is titled, will not
4   tolerate harassment of its employees by
5   non-employees; is that correct?
6   A. That's correct.
7   Q. Okay. Next, I'm going to show you what
8   I'll call page two of Plaintiff's Exhibit A.
9   There's a highlighted portion right here
10  (indicating). Does it say, "If it is determined
11  that harassment has occurred, Decatur General will
12  take prompt and appropriate corrective action"?
13          MS. WAUDBY: Objection to form.
14          MS. BASWELL-GUTHRIE: Object to
15      the form.
16  A. It does.
17  BY MR. KING:
18  Q. In Ms. Bennett's case, I believe she first
19  complained of some sexual harassment on the part of
20  Dr. Gaillard on or about October 2005, and then he
21  no longer worked at the hospital in March of 2006;
22  does that sound correct?
23          MS. WAUDBY: Object to the form.

**Page 14**

1   A. She did complain in October of 2005. He
2   no longer worked at the hospital after 2006. He
3   never worked for the hospital.
4   BY MR. KING:
5   Q. But he never showed up again as of March
6   of 2006?
7   A. I don't know the answer to that question.
8   Q. Do you have any personal knowledge as to
9   whether his contract was still in place?
10  A. I do not.
11  Q. Okay. Well, let's see. Well, would it be
12  your opinion that when you have an employee
13  complain of sexual harassment, that six months'
14  time period to investigate and then have this
15  employee no longer return, would that be prompt and
16  appropriate corrective action?
17          MS. WAUDBY: Object to the form.
18      Mischaracterizes previous testimony.
19      Answer the best that you can.
20          MS. BASWELL-GUTHRIE: And I will
21      object to the form, too.
22  BY MR. KING:
23  Q. I'm just asking. In your opinion, is six

**Page 15**

1   months of complaints, would that be prompt and
2   appropriate corrective action in your opinion as a
3   Human Resources Director?
4           MS. WAUDBY: Objection to form.
5           MS. BASWELL-GUTHRIE: Object to
6       the form.
7           MS. WAUDBY: I don't think
8       there's any testimony of six months of
9       complaints.
10          Go ahead.
11          MS. BASWELL-GUTHRIE: Calls for a
12      legal conclusion.
13  A. Well, there was not six months of
14  complaints.
15  BY MR. KING:
16  Q. But the complaints started when from
17  Ms. Bennett?
18          MS. WAUDBY: Objection to form.
19  A. The first complaint was in October, and it
20  was dealt with at that time.
21  BY MR. KING:
22  Q. And then when was the last complaint?
23  A. The last complaint was the mid to the end

**Page 16**

1   of February.
2   Q. Okay. And as we'll get to in a minute,
3   there were several other employees that also voiced
4   complaints directly to you?
5           MS. WAUDBY: Objection to form.
6           MS. BASWELL-GUTHRIE: Object to
7       the form.
8   BY MR. KING:
9   Q. Did they not?
10  A. That's incorrect.
11  Q. Were there any employees that voiced
12  grievances to you regarding Dr. Gaillard's activity
13  towards them?
14  A. There was one in October after
15  Ms. Bennett.
16  Q. What was her name?
17  A. Catherine Tipton.
18  Q. Do you have any personal knowledge of
19  Laura Graham ever filing a complaint regarding
20  Dr. Gaillard's activities regarding sexual
21  harassment?
22  A. That was in March of '06.
23  Q. Okay. Have you brought Ms. Bennett's

**Page 17**

```
1  file?
2      A. No.
3      Q. Her personnel file?
4          MS. WAUDBY: Just for the record,
5      the personnel file has been produced
6      previously with what I gave you just a few
7      minutes ago, being the supplement from
8      when it was originally produced.
9  BY MR. KING:
10     Q. Do you have any personal knowledge as to
11 whether my law firm has been provided Ms. Bennett's
12 entire personnel file?
13         MS. WAUDBY: Object to the form.
14     I don't think that she's responsible for
15     the production to you.
16         MR. KING: Well, that's who --
17     30(b)(6), that's who we asked to be here
18     today. If she can't testify --
19         MS. WAUDBY: She can testify as
20     to the personnel file and its contents.
21     The production was obviously done by
22     counsel, not by my client directly. If
23     you have issues regarding production,
```

**Page 18**

```
1      address it with me; if you want to confirm
2      what's in the personnel file, you can ask
3      her --
4  BY MR. KING:
5      Q. Do you have any personal knowledge as to
6  whether you provided your counsel with
7  Ms. Bennett's entire personnel file?
8          MS. WAUDBY: I'll be cautioning
9      you. I don't want you to get into any
10     discussions where --
11         MR. KING: I don't think there's
12     a need to keep interrupting me. That's a
13     very simple question.
14         THE WITNESS: Well, I will need
15     to review --
16         MS. WAUDBY: I'm just
17     counseling -- wait until I'm done.
18         I'm counseling my client to be
19     careful not to get into any discussions
20     with me; okay?
21         MR. KING: Okay. Thank you.
22     A. I would need to see what you have as the
23 file before I could answer that.
```

**Page 19**

```
1  BY MR. KING:
2      Q. That's pretty extensive. So I guess your
3  testimony is you don't know whether or not Decatur
4  General has provided your counsel with Nina
5  Bennett's entire personnel file?
6      A. To the best of my knowledge, we have, but
7  I would have to review what the file is before I
8  could answer that without any question.
9      Q. Okay. Well, I don't believe I have a
10 complete set together in one stack to let you go
11 through that and see, so -- I don't believe I do.
12         So your testimony is that you did not
13 bring Nina Bennett's personnel file; is that
14 correct?
15         MS. WAUDBY: Object to the form.
16     A. I did not.
17 BY MR. KING:
18     Q. Okay.
19         MS. WAUDBY: The record reflects
20     it previously has been produced.
21 BY MR. KING:
22     Q. Do you have any type of file on
23 Dr. Gaillard?
```

**Page 20**

```
1      A. I do not.
2      Q. Okay. Is it pronounced Gaillard or
3  Gaillard?
4      A. I say Gaillard.
5      Q. Okay. Do you have any knowledge as to
6  whether Decatur General maintains copies of
7  subcontractors' files with regards to sexual
8  harassment claims?
9          MS. WAUDBY: Object to the form.
10     A. I have no knowledge.
11 BY MR. KING:
12     Q. So it's your testimony that Decatur
13 General does not maintain a copy of subcontractors'
14 files once a sexual harassment claim is made
15 against a subcontractor?
16         MS. WAUDBY: Object to the form.
17     A. I have no knowledge of that.
18 BY MR. KING:
19     Q. Do you have any personal knowledge of any
20 complaints by any other employees at Decatur
21 General with regards to Dr. Gaillard's sexual
22 remarks or innuendos or complaints?
23         MS. WAUDBY: Objection to form.
```

**Page 21**

            MS. BASWELL-GUTHRIE: Object to
    the form.
            MS. WAUDBY: Other than
    what . . .
    A. There were two employees that I spoke
with, other than Nina Bennett. That's Catherine
Tipton and Laura Graham.
BY MR. KING:
    Q. Okay. Do you have any personal knowledge
as to whether either of these two ladies filed an
EEOC complaint against Decatur General?
    A. Laura Graham did.
    Q. But Catherine Tipton did not?
    A. No.
    Q. Okay. Do you know who Michelle Clark is?
    A. She's an employee at the hospital.
    Q. In what capacity?
    A. I believe she's a nurse.
    Q. Do you have any personal knowledge of her
making any complaints regarding Dr. Gaillard making
sexual remarks to her?
    A. No.
            MS. WAUDBY: Object to the form.

**Page 22**

BY MR. KING:
    Q. Do you have any personal knowledge of
Teresa Smith making any complaints about
Dr. Gaillard's --
    A. No.
    Q. -- sexual remarks?
            MS. WAUDBY: Object to the form.
    Wait until he's done.
BY MR. KING:
    Q. Who is Teresa Smith?
    A. She is a nurse who used to work at Decatur
General.
    Q. But she doesn't work there anymore?
    A. No.
    Q. Do you have any personal knowledge of
where she does work?
    A. I do not.
    Q. Who is Shovana Rohan?
    A. She's an employee at Decatur General.
    Q. Is she a nurse?
    A. She may be a LPN. I cannot testify to her
position.
    Q. Do you know if she works in the emergency

**Page 23**

department?
    A. She does.
    Q. Do you have any personal knowledge of her
making any complaints regarding Dr. Gaillard making
sexual remarks to her?
            MS. WAUDBY: Object to the form.
    A. No, I do not.
BY MR. KING:
    Q. Is Nikki Williams a nurse in the ED?
    A. I do not know that name.
    Q. When I say "ED," I want to make sure we're
on the same plane; is that emergency department?
    A. It is.
    Q. Okay. Do you know who Heather Garrison
is?
    A. I do not.
    Q. Do you know LaTia Freeman?
    A. She's an employee at the hospital.
    Q. Do you have any personal knowledge as to
whether she complained to Dr. Tracy Pool regarding
Dr. Gaillard and sexual remarks?
            MS. WAUDBY: Object to the form.
    A. I do not have any personal knowledge, no.

**Page 24**

BY MR. KING:
    Q. So if she did make a complaint to
Dr. Pool, you just don't know about it; is that
correct?
            MS. BASWELL-GUTHRIE: Objection
    to form.
    A. That's correct.
BY MR. KING:
    Q. Do you have any personal knowledge as to
whether Martha Potts complained to Dr. Tracy Pool
regarding Dr. Gaillard and any sexual remarks?
            MS. WAUDBY: Object to the form.
    A. I do not.
BY MR. KING:
    Q. Do you know who Martha Potts is?
    A. I do.
    Q. Who is she?
    A. She's an RN at the hospital.
    Q. Is she in the ED?
    A. She is.
    Q. So it's your testimony that Catherine
Tipton and Laura Graham complained to your
department regarding Dr. Gaillard; is that correct?

**25**

1  A. Yes. To me.
2  Q. And you have no personal knowledge as to
3  whether Ms. Freeman and Ms. Potts complained to
4  Dr. Tracy Pool; is that correct?
5  A. That's correct.
6  Q. What's Dr. Pool's title at Decatur
7  General?
8        MS. WAUDBY: Object to the form.
9  A. He is a contracted physician.
10 BY MR. KING:
11 Q. Who does he work for?
12 A. ApolloMD.
13 Q. They're his employer?
14 A. Yes.
15 Q. Does he oversee the other physicians in
16 the ED?
17 A. I believe he did at that time. I'm not
18 sure if he still does.
19 Q. But between let's say October 2005 and
20 March 2006, did he oversee the physicians in the
21 emergency department?
22 A. Yes.
23 Q. To the best of your knowledge, did Decatur

**26**

1  General have any written policies in place
2  regarding complaints by employees who are
3  complaining about sexual harassment by
4  subcontractors?
5        MS. WAUDBY: Object to the form.
6  A. Are you asking me do we have a harassment
7  policy?
8  BY MR. KING:
9  Q. Regarding subcontractors harassment
10 sexually against Decatur General employees.
11       MS. BASWELL-GUTHRIE: Objection
12    to form.
13 A. Our policy does state that it would
14 include contract employees.
15 BY MR. KING:
16 Q. Is there a policy in place that you're
17 aware of whereby Decatur General will communicate
18 sexual harassment complaints to ApolloMD?
19       MS. WAUDBY: Object to the form.
20 A. Repeat the question.
21 BY MR. KING:
22 Q. Does Decatur General have any type of
23 written policy regarding how your department is to

**27**

1  refer a complaint about sexual harassment by a
2  Decatur General employee to Apollo or any other
3  subcontractor?
4        MS. WAUDBY: Object to the form.
5  A. We do not.
6  BY MR. KING:
7  Q. Between October of 2005 and March 2006, if
8  someone came to you and said, this doctor in the
9  emergency department is making sexual remarks to
10 me, what were you instructed to do regarding that
11 remark?
12       MS. BASWELL-GUTHRIE: Objection
13    to form.
14       MS. WAUDBY: Object to the form.
15 BY MR. KING:
16 Q. With a complaint. If a nurse came to you
17 and complained about an emergency room doctor
18 making sexual remarks to her, what were you
19 supposed to do?
20       MS. BASWELL-GUTHRIE: Objection
21    to form.
22 A. My responsibility would be to investigate.
23 BY MR. KING:

**28**

1  Q. Do you have any personal knowledge as to
2  who was supposed to contact Apollo regarding the
3  complaint?
4        MS. WAUDBY: Object to the form.
5  A. I contacted Dr. Pool.
6  BY MR. KING:
7  Q. And between October 2005 and March 2006,
8  who was he employed by?
9  A. He was employed by ApolloMD.
10 Q. Would that be the same company that
11 employed Dr. Gaillard?
12 A. To the best of my knowledge, yes.
13 Q. To the best of your knowledge?
14    Prior to January 1st of 2006, did your
15 emergency department nurses attend any courses or
16 seminars on how to handle sexual harassment
17 complaints?
18 A. Yes.
19 Q. Do you know the dates?
20 A. I couldn't tell you the exact dates. I
21 believe we have entered that as evidence. I can
22 tell you it was in November of 2005.
23 Q. Would you call that a seminar or a course

### Page 29

1  or a class, or what would you call that?
2              MS. BASWELL-GUTHRIE: Objection
3        to form.
4       A. It was an in-service.
5  BY MR. KING:
6       Q. I'm going to show you what's marked
7  Plaintiff's Exhibit 2 and ask you if you recognize
8  this document.
9              (Whereupon, Plaintiff's Exhibit 2
10                   was marked for identification
11                   and attached hereto.)
12 BY MR. KING:
13      Q. It's five pages in length. It starts out
14 with a picture on the left-hand side. Could you
15 just read what this first picture says, just so we
16 can identify this in words.
17      A. "Understanding and preventing sexual
18 harassment."
19      Q. Do you recognize that document --
20      A. I do.
21      Q. -- or I should say five-page document?
22 And what is that document?
23      A. It's a handout that we provided to our

### Page 30

1  employees for an in-service.
2       Q. Would this be the in-service that was
3  conducted after Ms. Bennett and others filed a
4  complaint with you regarding Dr. Gaillard's
5  remarks?
6              MS. WAUDBY: Object to the form.
7       A. It is.
8  BY MR. KING:
9       Q. So is it your testimony that this study
10 was set up after Nina Bennett's complaints?
11             MS. WAUDBY: Object to the form.
12      A. It did occur after her complaint, yes.
13 BY MR. KING:
14      Q. Do you have any personal knowledge of
15 whether you had these type courses for the
16 emergency department's nurses prior to Nina
17 Bennett's complaint?
18             MS. WAUDBY: Object to the form.
19      A. Yes. We have had these types of
20 in-services prior to.
21 BY MR. KING:
22      Q. About how often?
23      A. We have annual mandatory in-service

### Page 31

1  training for safety and infection control, various
2  different topics, and we do cover harassment in
3  that annual training.
4       Q. But this training session was just on
5  sexual harassment; is that correct?
6       A. This one was, yes.
7       Q. And Nina Bennett has been working at
8  Decatur General at least since 2001, I believe.
9              MS. WAUDBY: Object to the form.
10      A. I would have to review her personnel file
11 to verify that she's been there since 2001.
12 BY MR. KING:
13      Q. I did not notice any other references to
14 sexual harassment training in her personnel file,
15 so I'm assuming that as long as she's been an
16 employee there, that that document labeled
17 Plaintiff's Exhibit 2 is the only document in her
18 file regarding training in the sexual harassment
19 field.
20             MS. WAUDBY: Object to the form.
21      A. This document was not a part of her
22 personnel file.
23 BY MR. KING:

### Page 32

1       Q. Okay. So that document would just be a
2  Decatur General general document but not a part of
3  Nina Bennett's personnel file?
4       A. It is not part of her personnel file;
5  that's correct.
6       Q. Okay. Thank you. May I see that
7  document?
8       A. (Witness complies.)
9       Q. Let me show you page two. There are three
10 boxes, would you please read everything that's in
11 this third black box on page two of Plaintiff's
12 Exhibit 2?
13             MS. WAUDBY: Object to the form.
14             Document speaks for itself.
15      A. "What is hostile environment sexual
16 harassment? Unwelcome sexual conduct that
17 unreasonably interferes with job performance or
18 creates offensive or intimidating work
19 environment. Examples of a sexually hostile
20 environment: Jokes or remarks, cartoons, posters,
21 or other graphics, innuendos, or suggestive looks.
22 Note: The behavior does not have to result in
23 economic loss for the victim."