FILED
2007 Oct-22  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **NINA BENNETT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-06-S-4777-NE** |
| ) | |
| **DECATUR GENERAL HOSPITAL,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM OPINION AND ORDER

On October 2, 2007, this court entered a memorandum opinion and order denying motions to quash subpoenas issued by plaintiff to non-parties Jackson County Hospital ("Jackson") and Crestwood Medical Center ("Crestwood"), because the hospitals had not carried their burdens of proving the information sought in the subpoenas was protected by the Quality Assurance Privilege set forth in Alabama Code § 22-21-8, or by the "utilization review" privilege set forth in Alabama Code § 34-24-58.[1]  The case now is before the court on motions by both Jackson and Crestwood for reconsideration of the October 2 memorandum opinion and order or,

---

[1] Doc. no. 62.  The October 2 memorandum opinion and order also addressed the privilege set forth in Alabama Code § 34-24-59, as well as several other arguments asserted by defendant Henry Gaillard.  The court need not address those aspects of the October 2 opinion and order here, however, because they were not raised in any of the motions considered in this order.

in the alternative, for a protective order.[2]

The subpoenas in question contain the following language:

> Produce and permit inspection and copying of any and all records which involve disciplinary actions against Dr. Henry Gaillard, complaints against Dr. Gaillard, reports generated about any behavior of sexual harassment or offensive touching or language towards employees, reports of disciplinary action taken towards Dr. Gaillard, and state any reasons for dismissal, as such relates to:
> **Dr. Henry Gaillard.**[3]

The Quality Assurance Privilege set forth in Alabama Code § 22-21-8 provides in pertinent part that:

> All accreditation, quality assurance, credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities.  No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein.  Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in

---

[2]Doc. no. 78 (Crestwood's motion to reconsider or, in the alternative, for a protective order); doc. no. 79 (Jackson's motion to reconsider or, in the alternative, for a protective order).

[3]*See, e.g.,* doc. no. 61 (plaintiff's response to Gaillard's motion to quash), at 2 (emphasis in original).

> preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials.

Ala. Code § 22-21-8(b) (1975) (Repl. Vol. 2006).  The statute defines the terms "accreditation, quality assurance and similar materials" to include

> written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff.  The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.

Ala. Code § 22-21-8(a) (1975) (Repl. Vol. 2006).

As the parties seeking to assert this privilege, Jackson and Crestwood bear the burden of proving the privilege applies. *See Ex parte Coosa Valley Health Care, Inc.,* 789 So. 2d 208, 219 (Ala. 2000) ("[T]he burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on the party asserting the privilege."). *See also Ex parte St. Vincent's Hospital,* 652 So. 2d 225, 230 (Ala. 1994).  Both movants have submitted additional evidence to demonstrate the applicability of the privilege.

Jackson submitted the affidavit of Jill Green, its Director of Quality

Management. Ms. Green states:

> 3. The hospital maintains programs related to quality assurance, credentialing and peer review as part of its efforts to comply with accreditation standards, to ensure that healthcare professionals are competent in their specific areas, and to improve the quality of healthcare provided to its patients. Materials are gathered and created to improve the quality of care and to improve the hospital's quality of service.
>
> 4. The documents gathered as part of quality assurance efforts usually contain some private medical and personal information of our patients.
>
> 5. In the course of quality assurance review, documents are created which reflect the facts and details which may require peer review.
>
> 6. Information maintained and created as part of the hospital's quality assurance program are reviewed [sic] in furtherance of the hospital's responsibility of improving patient care.
>
> 7. Quality assurance information is kept confidential and is not available for review by non authorized persons. It is not available for the general public. The hospital limits the use of the information to quality assurance and/or peer review.
>
> 8. When the subpoena was received, I endeavored to make a thorough search of all of the hospital's materials which would be responsive to the request.
>
> 9. The hospital has no records of or any reports "generated by any behavior of sexual harassment, offensive touching or language towards employees."
>
> 10. The only records the hospital has are quality assurance records. In the course of my search for responsive records I located the

following records. I am summarizing the contents of the files and the purpose for which the materials were gathered so that the Court can recognize that these records are quality assurance records:

- A. A June 16, 2005 Jackson County Hospital quality assurance file which relates specifically to the proper process of referring an emergency room patient back to the patient's own primary care doctor for followup care relating to wound dressing change, rather than back to the emergency room.

- B. A July 12, 2005 Jackson County Hospital quality assurance file which relates specifically to peer review of treatment and protocol following an emergency room visit and hospital to hospital transfer of an appendicitis patient.

- C. An August 6, 2005 Jackson County Hospital quality assurance file which specifically relates to quality assurance and peer review following a *patient's* complaint of sexual harassment during examination and treatment in the emergency room, including alleged improper physical contact and an alleged inappropriate comment during examination or treatment.

    . . . .

- D. A September 4, 2005 Jackson County Hospital quality assurance file which relates specifically to peer review of treatment and protocol for an intoxicated emergency room patient suffering from a facial wound and possible mandible fractures.

- E. A September 15, 2005 Jackson County Hospital quality assurance file which relates specifically about [sic] an earlier dated observation of long wait times for treatment in the emergency room and hearing an inappropriate comment made about an intoxicated patient in an adjoining

treatment.

11. All of these files were created as part of the hospital's quality assurance program or for the purposes of furthering peer review.

12. Each of the files contains some private medical and identification information of the patients.[4]

Crestwood submitted the affidavit of Dendy Donovan, its Risk Manager. Ms. Donovan states:

2. In our Quality Assurance process, we have established an Ongoing Periodic Performance Committee, to peer review the care given by the physicians. Based on those evaluations undertaken, each physician could be disciplined and/or action taken. The evaluations also help in the credentialing process of each physician.

3. The hospital undertakes this process in order to comply with accreditation requirements to ensure physicians are competent in their particular areas. It is also an attempt to render better healthcare to patients. It is the function of this committee to review the quality of care given to patients at Crestwood Medical Center through Quality Assurance measures.

4. Additionally in the course of Quality Assurance, documents may be created which reflect or record the details which may necessitate peer review. All of the information is reviewed by the Medical Executive Committee and is in furtherance of their responsibility of improving patient care through Quality Assurance.

5. The only document that Crestwood Medical Center has that is responsive to the subpoena issued by Nina Bennett is a Peer Review Physician Profile document that is located in Dr. Gaillard's credentialing file. The document is considered peer review and was the subject of quality assurance credentialing, accreditation and thus is subject to

---

[4]Doc. no. 79, Exhibit 1 (Affidavit of Jill Green), at ¶¶ 3-12 (emphasis supplied).

being privileged.[5]

The court concludes that these affidavits are sufficient evidence to support the claims of privilege by Jackson and Crestwood. *See, e.g., Kingsley v. Sachitano,* 783 So. 2d 824, 828 (Ala. 2000) (holding that existence of privilege was supported by testimony of hospital CEO "that he had reviewed the documents requested by the plaintiff and had determined that they were the subject of quality assurance, credentialing, and accreditation and thus were subject to the privilege of § 22-21-8").

Plaintiff's arguments to the contrary are unavailing. Plaintiff asserts that Jackson and Crestwood did not maintain separate employee or personnel files on Dr. Gaillard, and there is therefore no way to distinguish between a document created for peer review or credentialing purposes, and a document created in the "regular course of business" and exempt from the privilege. Plaintiff relies upon Section 6-5-333(d) of the Alabama Code, which also addresses the confidentiality of proceedings involving peer review or quality control committees, and which states:

> Nothing contained herein shall apply to records made *in the regular course of business* by a hospital, dentist, dental auxiliary personnel, chiropractor, chiropractic auxiliary personnel, physician, physician auxiliary personnel, or other provider of health care and information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee.

---

[5]Doc. no. 78, Exhibit A (Affidavit of Dendy Donovan), at ¶¶ 2-5.

Putting aside the fact that Jackson and Crestwood did not rely upon § 6-5-333(d) in their motions to quash, or in their motions for reconsideration, and plaintiff did not rely upon that section in response to the motions to quash, there simply is no evidence to support plaintiff's assertion. Jackson and Crestwood have informed the court that the only documents they have that are responsive to plaintiff's subpoena are peer review or credentialing documents. There is no evidence that this information is incorrect, and that additional personnel documents exist that would not be subject to the privilege.

Accordingly, the court concludes that the information sought in plaintiff's subpoenas to Jackson and Crestwood is protected by the Quality Assurance Privilege set forth in Section 22-21-8 of the Alabama Code.[6] Both of these parties' motions for reconsideration are GRANTED. The order entered on October 2, 2007 is VACATED, to the extent that it denied the motions to quash by Jackson and Crestwood.[7] Upon reconsideration, the motions to quash by Jackson and Crestwood are GRANTED, and the subpoenas plaintiff issued to Jackson and Crestwood are QUASHED.

---

[6] Because the information sought in the subpoenas is privileged under § 22-21-8, the court need not consider the assertion of privilege under Alabama Code § 34-24-58.

[7] The October 2, 2007 order denying defendant Henry Gaillard's motion to quash is unaffected by this order.

DONE this 22nd day of October, 2007.

/s/ Lynwood Smith
_____
United States District Judge